CLERK'S OFFICE U.S. DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
September 30, 2024
LAURA A. AUSTIN, CLERK
BY: s/M. Ballweg
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELMER S., | ) |
|     Plaintiff, | )    Civil Action No. 3:22-cv-00062 |
| | ) |
| v. | )    MEMORANDUM OPINION |
| | ) |
| MARTIN O'MALLEY, | )    By:    Joel C. Hoppe |
| Commissioner of Social Security, | )           United States Magistrate Judge |
|     Defendant. | ) |

Plaintiff Elmer S. asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. ECF No. 2. The case is before me on the parties' consent under 28 U.S.C. § 636(c). ECF Nos. 13, 14. Having considered the administrative record ("R."), ECF No. 10-1, the parties' briefs, ECF Nos. 19, 22, 23, and the applicable law, I find that the Commissioner's final decision is supported by substantial evidence. Accordingly, I will affirm the decision under 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" under the Social Security Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th

2

Cir. 2017); 20 C.F.R. § 404.1520(a)(4)[1] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In September 2020, Elmer filed for DIB alleging that he had been disabled since January 15, 2020, because of hypertension, myocardial infarction, osteoarthritis in both knees, pneumoconiosis, gout in both feet, and a lung problem. *See* R. 180, 183. He was 60 years old in January 2020, making him a person "closely approaching retirement age" under the regulations, 20 C.F.R. § 404.1563(f). *See* R. 58. Virginia Disability Determination Services ("DDS") denied his claim initially in January 2021, R. 57–61, and upon reconsideration in March 2021, R. 62–66. On August 31, 2021, Elmer appeared with counsel and testified by telephone at an administrative hearing before ALJ H. Munday. R. 33–50. A vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on December 22, 2021. R. 16–26. At step one, she found that Elmer met the insured status requirements for DIB through March 31, 2021, his date last insured ("DLI").[2] R. 18. She also found that Elmer had worked after his alleged onset date of January 15, 2020, but that his work was not substantial gainful activity. R. 18–19. At step two, the ALJ found that Elmer had one severe medically determinable impairment ("MDI") of aortic stenosis. R. 19 (noting that this MDI was "severe" through Elmer's DLI). His other MDIs

---

[1] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the Commissioner's final written decision.

[2] "To qualify for DIB, [Elmer] must prove that [he] became disabled prior to the expiration of [his] insured status." *Johnson*, 434 F.3d at 655–56. Thus, the relevant period for Elmer's DIB claim is January 15, 2020, through March 31, 2021. R. 436, 443; *see Tolbert v. Colvin*, No. 1:15cv437, 2016 WL 6956629, at *1 (M.D.N.C. Nov. 28, 2016). The ALJ was required to consider all the relevant evidence in the record, including any evidence created after Elmer's DLI that offered some insight into how his medical condition from January 2020 through March 2021 affected his work-related functional capacities during that time. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341–42 (4th Cir. 2012); *Parker v. Berryhill*, 733 F. App'x 684, 697 (4th Cir. 2018).

were non-severe, including his back condition. R. 19–20. At step three, the ALJ concluded that Elmer's severe MDI did not meet or medically equal the relevant Listing. R. 20 (citing 20 C.F.R. pt. 404, subpt. P., app. 1 § 4.04).

The ALJ then evaluated Elmer's RFC during the relevant period. *See* R. 20–24. She found that Elmer could have done "medium work"[3] which required at most frequent stooping, kneeling, crouching, crawling, and climbing. R. 20. Based on the VE's testimony, the ALJ found that this RFC allowed Elmer to return to his past relevant work as a mason and as a truck driver as those jobs were "actually and generally performed." R. 24 (citing R. 74–77). The ALJ also found that a hypothetical worker with this RFC and Elmer's vocational profile could have done certain unskilled "medium" work occupations (counter supply worker, dietary worker, and cleaner) that offered a significant number of jobs in the national economy. R. 24–25. Accordingly, the ALJ found that Elmer was not disabled during the relevant period. R. 25. The Appeals Council denied Elmer's request to review the ALJ's decision, R. 1–4, and this appeal followed.

### III. Discussion

Elmer challenges the ALJ's exertional RFC assessment as it relates to his "aortic stenosis and back problems." Pl.'s Br. 3, ECF No. 19; *see generally id.* at 7–11; Pls.' Reply 1–2, ECF No. 23. Specifically, he argues that the ALJ's failure to "proper[ly] develop[]" the record as to those MDIs resulted in the ALJ "devis[ing] the RFC without medical support." Pl.'s Br. 7. Elmer asks this Court to remand his case so "record development can happen." *Id.* at 8. His counseled brief does not identify any specific medical information that might have changed the outcome of his

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). A person who can meet these strength demands can perform the "full range of medium work" if he can also stand or walk, "off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

4

DIB claim but that is supposedly missing from the ALJ hearing-level record, *see* Pl.'s Br. 8–11, Pl.'s Reply 1–2. *Cf. Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (affirming Commissioner's denial of benefits where the claimant "failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim"); *Scarberry v. Chater*, No. 94-2000, 1995 WL 238558, at *4 n.13 (4th Cir. Apr. 25, 1995) ("The ALJ had before him sufficient facts to determine the central issue of disability. We note that [claimant's] attorney does not identify what the missing evidence would have shown; rather, she merely speculates that having that evidence 'might' have produced a different result."). Instead, Elmer argues "the ALJ guessed at a[ medium] RFC in this case." Pl.'s Br. 11; *accord id.* at 8, 10–11; Pl.'s Reply 2. His argument is not persuasive.

A.  Summary

   1.  Treatment Records

On January 16, 2020, Elmer was seen by Donna Landen, M.D., for complaints of chest pain. R. 248–51. Elmer reported experiencing "intense left-sided chest pain at least once a week while at work (exertion)" for the past month. R. 249–50. He would break into a sweat and felt like he was having a heart attack, but he kept working because his "boss won't let him stop." *Id.* On examination, Dr. Landen noted that Elmer was breathing comfortably, but sweat was dripping from his armpits. R. 250. Elmer did not complain of back pain, and Dr. Landen did not note any abnormalities. R. 249–50. Dr. Landen diagnosed "mild" aortic stenosis, prescribed aspirin once daily for chest pain and Drysol for sweating, told Elmer to stop smoking, and recommended a stress echocardiogram. R. 250. Elmer underwent an echocardiogram in March 2020. R. 486. Test results showed "moderate" aortic stenosis, normal left ventricle perfusion and function, and no evidence of myocardial ischemia. R. 482, 486. In April, Elmer was at work, but

5

was "able to step away" for a tele-medicine visit with Dr. Landen. R. 244–47. He reported feeling well overall. R. 245. He had not experienced any chest pain. *Id.* Elmer was not using Drysol, and his excessive sweating had "resolved without any apparent reason." *Id.* Dr. Landen noted that Elmer's cardiac tests were negative for ischemia. *Id.*

Elmer next saw Dr. Landen more than a year later in August 2021, R. 568–71, five months after his DLI. Elmer reported that he had been in a motor vehicle accident three weeks earlier. R. 569. He was currently doing stonework and estimated that he lifted more than 1,000 pounds a day. *Id.* He was building a stone patio, which involved lifting stone and using a jackhammer. *Id.* He reported that his knees and back hurt "all the time" and had reached "a point where he [did not] think he [could] continue physically" doing stonework. *Id.* He reported a "[h]istory of lumbar disc herniation in 2010, when he presented to the ED with left foot drop." *Id.* Elmer also had shortness of breath with exertion and "[s]ome dizziness with standing, but not often." *Id.* He still took aspirin, but had stopped taking other medications. *Id.* On examination, Dr. Landen noted that Elmer had pain upon palpation to his lower back and decreased range of motion in his hips, but negative straight-leg raising tests. R. 570. She assessed chronic midline low back pain with left sided sciatica and aortic stenosis, moderate. *Id.* She also noted that Elmer had high blood pressure. R. 569–70. Dr. Landen was "concerned about worsening aortic stenosis, but at this time [Elmer] doesn't have much dizziness with standing." *Id.* She asked him to let her know when his symptoms are worse, and she prescribed blood pressure medication. *Id.*

Dr. Landen also opined that Elmer "likely can't keep this type of manual labor up, but [she] can't make [a] statement about disability." *Id.*; *see* R. 571 (staff note indicating that Citizens Disability faxed disability paperwork for Dr. Landen to fill out). She noted in particular that she could not give "specifics about % level of activity, lifting etc that [Elmer] can do"

6

because she was "not able to assess" those functional capacities. R. 570. She told Elmer that "he would likely need PT to do a comprehensive evaluation for this." *Id.*

On October 2, 2021, Elmer did not appear for his scheduled physical consultative examination arranged by the ALJ after the administrative hearing. R. 642; *see* R. 45–46, 50.

2.  *DDS Medical Opinions*

On January 13, 2021, William Rutherford Jr., M.D., reviewed Elmer's records for DDS. Dr. Rutherford noted treatment records from January 2020 showed that Elmer complained of chest pain and a heart murmur was identified on exam, but a follow-up exam in April 2020 showed improved symptoms and "negative" cardiac tests. R. 59. Dr. Rutherford found that the medical evidence between January 2020 and September 30, 2020, which DDS had identified as Elmer's DLI, showed that Elmer had "non-severe" essential hypertension during this nine-month period. R. 59–60. Dr. Rutherford concluded that "the available medical information [was] not sufficient to assess [Elmer's] physical capability during that time." R. 59. On reconsideration review for DDS, Eugene Noland, Jr., M.D., affirmed the initial decision. R. 64.

3.  *Elmer's Statements*

On August 31, 2021, Elmer testified at the administrative hearing during a lunch break from his job working as a stonemason. R. 37–38. He worked fourteen hours a week, which was "about all [he] can handle," R. 39, because his legs, back, and knees "will give out," R. 40. His legs and knees "do pretty well" "as long as [he doesn't] overextend [him]self," but his "back hurts constantly." R. 42. Elmer treated those problems with ibuprofen. R. 43. He also had "heart issues," but those "resolved because [he has] been on medication." *Id.* Back pain limited his abilities to stand for more than fifteen minutes before moving his position or to lift more than twenty pounds. R. 43–44.

7

B.  *The ALJ's Decision*

The ALJ considered this evidence throughout her decision. *See* R. 19–24. She also noted that she granted Elmer's request for a post-hearing physical CE, but Elmer did not appear for that exam as scheduled on October 2, 2021. R. 16. Accordingly, her "decision [was] based on the evidence currently in the record." *Id.*

The ALJ found that Elmer's aortic stenosis was a "severe" MDI during the relevant time because it caused "greater that minimal limitation [on his] ability to perform basic work activities." R. 19; *see* 20 C.F.R. § 404.1522(b)(1) (basic physical work activities). She also noted that Elmer's July 2010 MRI showed "mild facet hypertrophy . . . at the L3-L4 disc level as well as small right paracentral disc bulging at the L4-L5 disc level," but found that Elmer's medical records did "not indicate that he ha[d] . . . a severe back impairment" before his DLI. *Id.* (citing R. 567). Specifically, Elmer's record contained no updated imaging and his physical exams in 2020–2021 reflected "no noted . . . spasm at the spine, positive straight leg, or gait impairment." *Id.* (citing R. 569–70, 606–09). The ALJ discussed this medical evidence in greater detail as part of her subsequent RFC assessment. *See* R. 21–24 (citing R. 375, 486–87, 515–17, 569–71, 586–87, 606–08, 617).

The ALJ also discussed Elmer's allegedly disabling cardiac symptoms and back pain. *See* R. 21–24 (citing R. 37–45, 183). She found that Elmer's MDIs could reasonably be expected to cause his alleged symptoms during the relevant time, but that his statements describing the "intensity, persistence, and functionally limiting effects" of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." R. 22; *see* R. 22–23 (symptom analysis). The ALJ also considered the medical opinions from Dr. Landen and the two DDS reviewing physicians. R. 23. She found that Dr.

8

Landen's opinion that Elmer "could not continue the work he was performing" in August 2021 was not "particularly persuasive" because the opinion was conclusory, vague, and "not provided on a function-by-function basis." *Id.* (citing R. 569–71). The ALJ also recognized that Dr. Landen had noted Elmer had "back tenderness and reduced hip range of motion" on the August 2021 exam where Dr. Landen made this statement, but she correctly pointed out that these exam findings "were not made until [five] months after" Elmer's DLI. *Id.* The ALJ found the DDS assessment that Elmer's record contained "insufficient evidence of any severe impairment . . . . was not persuasive because the experts were unable to consider [specific] evidence that was received after March 2021," R. 23, which was also Elmer's actual DLI, *see* R. 18–19. She agreed with the DDS physicians' conclusions that Elmer's "heart condition [was] not disabling," but found that the hearing-level record contained "sufficient evidence that the condition [was] severe," R. 23, from January 15, 2020, through March 31, 2021, R. 19.

     Finally, the ALJ found that Elmer could have done at most medium-exertion work that required at most frequent stooping, kneeling, crouching, crawling, and climbing. R. 23; *see* R. 20. She based this RFC finding on "his diagnostic testing, clinical exams, and reported activity level." R. 23–24 (acknowledging that Elmer may have "struggle[d] to perform heavy work tasks"[4] during the relevant period, but concluding that the record demonstrated that he "still retain[ed] the strength and stamina for medium work tasks"); *see also* R. 22–23 (ALJ's symptom analysis).

C.    *Discussion*

     Elmer challenges the RFC finding that he can perform medium work despite his heart and back conditions. He notes that his record contains "no medical guidance" regarding his MDI-

---

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

9

related functional limitations, Pl.'s Reply 2, and he asserts that the ALJ therefore did not adequately develop the record. *See generally* Pl.'s Br. 7–11; Pl.'s Reply 1–2. "Social Security hearings are non-adversarial and the ALJ has a duty to develop the record, this duty is discharged, however, so long as 'the record is adequate to make a determination regarding a disability claim.'" *Greco v. Astrue*, No. 7:11cv399, 2012 WL 6861354, at *9 (W.D. Va. Dec. 27, 2012) (quoting *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000)) (internal citations omitted). This means that "the medical evidence of record need only be complete enough to make a determination regarding the nature, effects, and duration of a claimant's [alleged] disability and the claimant's RFC." *Boyd v. Astrue*, Civ. No. BPG-09-150, 2010 WL 3369362, at *4 (D. Md. Aug. 23, 2010) (citing 20 C.F.R. § 416.913(e)).

      The ALJ found that Elmer's record as of December 2021 contained "sufficient evidence" to evaluate the nature and severity of his MDIs during the relevant period, R. 23; *see* R. 19–20, and she specifically rejected the DDS reviews' opinions that there was "insufficient evidence" to assess the severity of Elmer's MDIs or his physical functioning during that time, R. 23; *see* R. 22–24. The ALJ's decision as a whole sets out a reasonably accurate and complete summary of all the record evidence bearing on the functionally limiting effects of Elmer's heart condition and back pain from January 2020 through March 2021. *See* R. 19–23. This included a handful of treatment notes, diagnostic images and physical exam findings dated between July 2010 and August 2021, Dr. Landen's statements about Elmer's medical conditions, and Elmer's statements both to his healthcare providers and to the agency. "After careful consideration of the entire record," the ALJ made specific findings about the nature, severity, and duration of Elmer's allegedly disabling heart and back conditions, as well as Elmer's physical RFC through his DLI of March 31, 2021. R. 18–20. Elmer challenges the ALJ's determination that he could have

performed medium work, R. 20. *See* Pl.'s Br. 7–11; Pl.'s Reply 1–2. He does not challenge the ALJ's finding that his hearing-level record contained "sufficient evidence" to conclude that his heart condition was severe, R. 23. *See* Pl.'s Br. 7–11; Pl.'s Reply 1–2.

      Instead, Elmer appears to argue that the ALJ should have "re-contact[ed] medical sources" or ordered a post-hearing CE after she rejected the DDS physicians' conclusions that Elmer's record contained insufficient evidence. *See* Pl.'s Br. 9 (citing 20 C.F.R. § 404.1512). Notably, his counseled briefs do not acknowledge that the ALJ *did* arrange for a post-hearing physical CE, *see* R. 50, but that Elmer was a "no show" at that exam in October 2021. R. 642; *see also* R. 16, 45–49, 50. The regulations provide that an ALJ *may* recontact a claimant's medical source to seek additional evidence *if* the evidence is insufficient to determine whether the claimant is disabled. 20 C.F.R. § 404.1520b(b)(2)(i). An ALJ is not required to recontact a claimant's own medical source. *See Brown v. Saul*, No. 7:18cv486, 2020 WL 1540400, at *4 n.3 (W.D. Va. Mar. 31, 2020); *Rickard v. Berryhill*, No. 3:18cv516, 2018 WL 4375156, at *12 (S.D. W. Va. Aug. 24, 2018). Elmer argues that the ALJ should have recontacted a medical source, but he does not identify which one. Dr. Landen previously refused to provide a medical opinion as to Elmer's physical RFC, and Elmer does not assert that she would have changed her mind at the ALJ's behest. Moreover, considering Elmer's statements that his cardiac symptoms had resolved during the relevant period and the medical records showing the same, I find that the existing record was adequate for the ALJ to make a decision about Elmer's disability claim.

      Elmer asserts that his cardiac and back problems undermine the ALJ's RFC finding that he can perform medium work. A claimant's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his or her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at

11

*2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), including objective clinical findings, medical opinions, and the claimant's own statements, 20 C.F.R. § 404.1545. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ's actual RFC finding, 20 C.F.R. § 404.1520(e), must "include those limitations that the ALJ considers credibly established," *Bryant v. Colvin*, No. 3:13cv349, 2014 WL 896983, at *1, *12 (E.D. Va. Mar. 6, 2014). The ALJ has broad (but not unbounded) discretion to determine if an alleged functional limitation is supported by or consistent with other relevant evidence in the claimant's record. *See Hines*, 453 F.3d at 564–66; *Perry v. Colvin*, 2:15cv1145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

The ALJ's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how she weighed any conflicting or inconsistent evidence in arriving at those conclusions, *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Generally, a reviewing court will affirm the ALJ's RFC assessment when she considered all the relevant evidence under the correct legal standards, *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and the written decision builds "an accurate and logical bridge from that evidence to [her] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (cleaned up), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). *See, e.g.*, *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020); *Thomas*, 916 F.3d at 311–12. The claimant bears the burden to show that his MDIs restricted his work-related functioning "in excess of the ALJ's RFC finding." *Keener v. Kijakazi*, No. 1:21cv79, 2022 WL 264878, at *5 (W.D.N.C. Jan. 27, 2022) (collecting cases).

Elmer's counseled briefs do not develop any argument on this point. Pl.'s Br. 7–11; Pl.'s Reply 1–2; *see Gari G. v. O'Malley*, No. 5:23cv26, 2024 WL 4003539, at *4–5 & n.1 (W.D. Va. Aug. 30, 2024). He notes that an RFC further limiting him to "light work"[5] might have changed the outcome of his claim, but he concedes that there is "no direct functional limitation in the file" to support a light RFC. *See* Pl.'s Br. 8. Instead, Elmer asserts that the ALJ improperly relied on her "lay opinion to guess at the [medium] RFC" in his case. Pl.'s Br. 8; *accord id.* at 10–11; Pl.'s Reply 2. This objection is without merit. *Felton-Miller*, 459 F. App'x at 230–31 (rejecting claimant's "argument that the ALJ RFC finding is not supported by substantial evidence because the ALJ is a layman and did not obtain a medical expert opinion," and explaining that the "ALJ properly based his RFC finding on Felton-Miller's subjective complaints, the objective medical evidence," and the medical opinions).

Regarding Elmer's cardiac condition, in January 2020, he complained to Dr. Landen of experiencing chest pain. She prescribed aspirin and recommended an echocardiogram, which showed mild or moderate aortic stenosis. In April, Elmer reported feeling well with no chest pain. He was working. More than a year later, and five months after Elmer's DLI, he saw Dr. Landen in August 2021. He reported experiencing shortness of breath with exertion and "[s]ome dizziness with standing, but not often." He was doing stonework, which involved extremely heavy lifting and using a jackhammer. Dr. Landen expressed concern for possible worsening aortic stenosis. She prescribed blood pressure medication, and she opined that Elmer "likely can't keep this type of manual labor up, but [she] can't make [a] statement about disability." At the administrative hearing in August 2021, Elmer testified that his "heart issues" have "resolved because [he had] been on medication." R. 43.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

The ALJ found that Elmer's aortic stenosis was a severe impairment, R. 19, but cited Elmer's statements both to Dr. Landen and at the administrative hearing in concluding that the heart condition was not disabling, R. 23. This is a legitimate reason to discount a claimant's complaints of disabling symptoms, and Elmer's counsel briefs do not challenge it, Pl.'s Br. 7–11; Pl.'s Reply 1–2. *See, e.g.*, *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Elmer also did "not have to be [symptom]-free in order to be found 'not disabled'" during the relevant time. *Green v. Astrue*, No. 3:10cv764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1457–58 (4th Cir. 1990)), *adopted by* 2011 WL 5599421 (E.D. Va. Nov. 17, 2011).

Moreover, because the record was adequate to resolve Elmer's DIB claim, the ALJ was not required to obtain a medical-source opinion addressing his RFC during the relevant time. *See Felton-Miller*, 459 F. App'x at 230–31. Contrary to Elmer's suggestion, Pl.'s Br. 8, this is not a case where the ALJ *substituted* her own lay opinion for a medical expert's professional opinion "when evaluating the significance of clinical findings," *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 108 (4th Cir. 2020). Nor was the ALJ "playing doctor," *Lewis*, 858 F.3d at 869, when she characterized relevant clinical findings as "mild," R. 19 (citing R. 567), and "moderately concerning" at a time when Elmer was doing strenuous masonry work, R. 23. Those statements track the actual medical records, R. 567–71, and the ALJ explained how she weighed this evidence reaching her RFC determination. Finally, the ALJ's medium RFC determination—albeit somewhat sparse at certain points—demonstrates that she "performed an adequate review of the whole record and that the decision [to deny] benefits is supported by substantial evidence." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018).

IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is affirmed under 42 U.S.C. § 405(g). A separate order will enter.

ENTER: September 30, 2024

Joel C. Hoppe
United States Magistrate Judge

15